# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No. 5:07cr0055** |
|  | : |  |
| **Plaintiff,** | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : |  |
|  | : |  |
| **ROSS BATTAGLIA,** | : | <u>**OPINION & ORDER**</u> |
|  | : |  |
| **Defendant.** | : |  |

On January 30, 2007, a grand jury indicted defendant Ross Battaglia on charges of knowingly receiving and distributing images of real minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2); knowingly receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2); and possessing a computer and ten floppy disks that contained child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The alleged child pornography was contained primarily on the hard drive of Battaglia's computer as well as on diskettes, all of which the government obtained from Battaglia's home pursuant to a search warrant. The government also obtained records pursuant to a search warrant from America Online, the internet service provider through which Battaglia had an email account.

Presently pending before the Court is Defendant's *Motion to Compel Rule 16 Information* (Doc. 14), in which Battaglia, through counsel, seeks to compel the government to provide the defense with <u>copies</u> of Battaglia's hard drive, image files, movie files, retrieved emails, and other records in the government's possession pertaining to this case. The government filed a brief in

opposition, and the Court held oral argument on June 14, 2007 to address this motion as well as two other motions filed by Battaglia.[1]  Accordingly, this matter is ripe for adjudication.  For the reasons articulated below, the Court **DENIES** Defendant's Motion to Compel.

## I.    LAW AND ANALYSIS

### A.    18 U.S.C. § 3509(m)

Defendant's request is governed by 18 U.S.C. § 3509(m), a provision of the recently enacted Adam Walsh Child Protection and Safety Act of 2006.  Pub. L. No. 109-248, 120 Stat. 587 (signed into law July 27, 2006).  That section provides that material that constitutes child pornography shall remain in the care, custody, and control of either the government or the court, and that the court "shall deny" any request by the defendant to copy, photograph, duplicate, or otherwise reproduce the material "so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m)(1), (2)(A).  The statute provides that property or material "shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." § 3509(m)(2)(B).

### B.    Discussion

Although Battaglia acknowledges § 3509(m), he argues that it does not bar the discovery he seeks in this case because § 3509(m) applies only to material that has been <u>adjudicated</u> to be child pornography (which the material in this case has not), it violates Rule 16 of the Federal Rules of

---

[1]  The Court ruled on the other two motions on the record at the hearing, denying Battaglia's *Motion to Dismiss for Pre-Indictment Delay* (Doc. 15) and his *Motion to Suppress* (Doc. 16).  This Order, therefore, addresses only his remaining motion to compel discovery.

2

Criminal Procedure, it violates the Ex Post Facto Clause, it is unconstitutional on due process grounds, both on its face and as applied, and, in this case, the government has not provided "ample opportunity" for inspection.  The Court addresses each argument in turn.

**1.    § 3509(m) does not require that material be "adjudicated" to be child pornography**

Defendant argues that, because § 3509(m) applies to material that "constitutes child pornography," any application of that statute first requires that the material be adjudicated and found to be child pornography, presumably by the same level of proof applicable at trial.  Without such a finding, Defendant argues that applying the statute would run afoul of the presumption of innocence afforded to criminal defendants, because merely applying the statute would be implicitly presuming that the material is, in fact, child pornography.

The Court is not persuaded by this argument.  Whether the material is actually child pornography, as that term is defined by statute, is an element of the case the government must prove at trial.  Irrespective of § 3509(m), the government still bears the burden at trial to prove beyond a reasonable doubt that the material constitutes child pornography, a point that a defendant is free to challenge.  *See United States v. Renshaw*, 2007 WL 710239, at *1 (S.D. Ohio Mar. 6, 2007) (rejecting the same argument and finding that "Defendant can still prepare his case, and should he convince a jury that the government failed to meet its burden of proof in establishing beyond a reasonable doubt that the material constitutes child pornography, then he would be acquitted."). Where, as here, there is an indictment, a federal grand jury has already found probable cause to believe that the material at issue is child pornography.  That is sufficient.

Determinations regarding discovery are traditionally made during the pre-trial phase of

3

criminal proceedings without resort to either a jury determination or even court involvement.  Thus, the scope of discovery under *Brady v. Maryland*, 373 U.S. 83 (1963), is determined, in the first instance, by government assessments of evidentiary materials in its possession - subject, of course, to subsequent assessments of the propriety of those determinations.  There is no reason to believe that government assessments of allegedly pornographic material, aided by grand jury endorsements of at least some of those assessments, provides adequate protection to defendants whose cases are subject to § 3509(m).

Accordingly, the Court finds that no formal adjudication that the material at issue is child pornography is necessary before § 3509(m) applies to such material, and that a defendant's presumption of innocence is not threatened by this conclusion.

### 2. § 3509(m) does not violate Rule 16 of the Federal Rules of Criminal Procedure

Next, Defendant argues that § 3509(m) violates Rule 16 of the Federal Rules of Criminal Procedure because Rule 16 allows a criminal defendant to inspect and copy items in the government's possession that, among others, were obtained from or belong to the defendant.  In other words, Rule 16 allows what § 3509(m) prohibits in cases involving child pornography.  Because of that conflict, Defendant argues that § 3509(m) is invalid and should not be applied.

The Court finds that this argument is also without merit.  "Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution."  *Dickerson v. United States*, 530 U.S. 428, 437 (2000); *see also United States v. O'Rourke*, 470 F.Supp.2d 1049, 1054 (D. Ariz. 2007) (rejecting the argument that § 3509(m) violates Rule 16, stating that "Congress has the power to override the Federal Rules of

4

Criminal Procedure.").  In this case, the statue specifically states that, "[n]otwithstanding Rule 16

of the Federal Rules of Criminal Procedure," a court shall deny a defendant's request to copy or

reproduce material that constitutes child pornography.  18 U.S.C. § 3509(m)(2)(A).  It is clear,

therefore, that Congress has the power to set aside Rule 16, to the extent that it is not constitutionally

required, and that it has done so in cases involving child pornography.[2]    Accordingly, Battaglia's

argument must be rejected.[3]

### 3.        § 3509(m) does not violate the Ex Post Facto Clause

Defendant also argues that application of § 3509(m) violates the Ex Post Facto Clause of the

Constitution because it was enacted after Battaglia is alleged to have committed the crime for which

he is being prosecuted.  He argues that the Ex Post Facto Clause is violated because § 3509(m) is

a change in the law that is retrospective and works to his disadvantage.  *See Weaver v. Graham*, 450

U.S. 24, 29 (1981) ("[T]wo critical elements must be present for a criminal or penal law to be *ex post*

*facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it

must disadvantage the offender affected by it.").

Because § 3509(m) operates as a procedural change rather than a substantive change in the

law, the Court must reject Battaglia's argument. The Ex Post Facto Clause forbids Congress from

---

[2]  The Court will address whether or not access to <u>copies</u> of material is constitutionally
required below when it addresses Defendant's arguments that § 3509(m) is unconstitutional.

[3]  Defendant also argues that § 3509(m) violates the separation of powers doctrine
because, by passing that statute, Congress is ordering a federal district court to provide a specific
outcome in ruling on a discovery motion.  For many of the same reasons why this statute does not
"violate" Rule 16, it also does not violate the separation of powers doctrine.  Congress has the
power to effectuate these types of procedural changes.  In addition, because the prohibition on
copying material only applies "so long as" the government makes the property or material
reasonably available, the statute does not order courts to deny all such motions, only those in
which the court finds that the government has made the material reasonably available.

enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. at 28 (quoting *Cummings v. Missouri*, 71 U.S. (Wall.) 277, 325-26, 18 L.Ed. 356 (1866)). "[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *United States v. Ristovski*, 312 F.3d 206, 210 (6th Cir. 2002) (citation omitted) (quoting *Dobbert v. Florida*, 432 U.S. 282, 293 (1977)). "Thus, no ex post facto violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.' *Ristovski*, 312 F.3d at 210 (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)). "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Ristovski*, 312 F.3d at 210 (quoting *Dobbert*, 432 U.S. at 293). Under the law as set out above, the change in the procedural rule effectuated by § 3509(m) does not violate the Ex Post Facto Clause.

### 4.    § 3509(m) is constitutional on its face and as applied in this case

Defendant argues that § 3509(m) is unconstitutional, facially and as applied, because it violates his Fifth Amendment right to due process and his Sixth Amendment rights to confront witnesses, to compulsory process, and to effective assistance of counsel.  In addressing these arguments, the Court views all of Battaglia's arguments relating to the constitutionality of § 3509(m) under the umbrella of due process, as safeguarded by the various provisions of the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause.").

6

Several district courts have addressed these precise challenges to § 3509(m), and all of them have upheld § 3509(m) as constitutional. *United States v. O'Rourke*, 470 F.Supp.2d 1049 (D. Ariz. 2007); *United States v. Knellinger,* 471 F.Supp.2d 640 (E.D. Va. 2007); *United States v. Sturm*, 2007 WL 1453108 (D. Colo. May 17, 2007). In doing so, those courts have examined the so-called "safety valve" in the statute, which provides that the prohibition of the statute shall apply only "so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m)(2)(A) (emphasis added). Pursuant to that safety valve, therefore, if the government does not make the property or material reasonably available to the defendant, then the prohibition on obtaining copies would not apply. The statute provides that material or property shall be deemed to be "reasonably available" if the Government provides "ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." § 3509(m)(2)(B).

In determining whether the statute is constitutional, then, the question is whether "ample opportunity" for inspection is consistent with constitutional due process. In finding that it is, courts that have addressed this question have relied on the canon of statutory construction that, where a statute is susceptible to more than one construction, a court should construe the statute so as to save it from unconstitutionality. *See, e.g., Knellinger*, 471 F.Supp.2d at 644-45 (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)). Consistent with that canon, the *O'Rourke*, *Knellinger*, and *Sturm* courts have construed § 3509(m) as requiring, at a minimum, that the government "must either give the defense team due-process-level access to the hard drive at the Government facility or must give the defense team a copy of the

7

hard drive." *O'Rourke*, 470 F.Supp.2d at 1056; *see also Knellinger*, 471 F.Supp.2d at 645 ("[t]he opportunity to inspect, view, and examine contemplated by § 3509(m)(2)(B) requires, at a minimum, whatever opportunity is mandated by the Constitution . . ."); *Sturm*, 2007 WL 1453108, at *7 ("I conclude that the requirements of Subsections (2)(A) and (2)(B) are consistent, if not coterminus, with the due process guarantee . . .").

This Court agrees with the sound reasoning of the *O'Rourke*, *Knellinger*, and *Sturm* courts, and finds that the "ample opportunity" requirement of § 3509(m) is at least coterminus with constitutional due process. Given that construction, § 3509(m) is not unconstitutional on its face. Moreover, because anything less than due-process-level access would not be an "ample opportunity" to inspect, view, and examine, the statute would not prohibit copies from being provided to the defense team if the government failed to provide an "ample opportunity." The only question that remains is whether the government in this case has provided the defense with an "ample opportunity." The Court addresses that question below.

### 5.    Defendant has not shown that he does not have "ample opportunity" in this case

Finally, Defendant argues that providing his defense expert with an opportunity to merely examine the hard drive is not "ample opportunity" because the costs of doing an on-site analysis at the government's facility are significantly higher than performing the analysis at the expert's own facility. In support of this assertion, Defendant relies on *Knellinger*, the only case in which a court has found that the government has not provided an "ample opportunity" for inspection under § 3509(m) and has ordered that copies be produced. For the reasons explained below, the Court finds that *Knellinger* is distinguishable, and that Defendant has been offered an ample opportunity to

8

inspect, view, and examine the material in question.[4]

In *Knellinger*, the U.S. District Court for the Eastern District of Virginia upheld the constitutionality of § 3509(m), but found that the evidence presented by the defendant showed that the government could not provide an "ample opportunity" to inspect the material at the government facility in that case. *Knellinger*, 471 F.Supp.2d at 649. As a result, the court ordered that the government provide a mirror image copy of the defendant's hard drive to defense counsel. *Id.* at 650. In that case, the defendant presented four witnesses to testify as to why inspection at a government facility did not provide "ample opportunity" to inspect, view, and examine the material in that case. Among those witnesses, one testified that, based on the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), a defendant may pursue a viable defense that the children in the alleged pornography are not real children, but are virtual children or the result of computer-enhanced images not prohibited by law. *Id.* at 646-47. Such a defense, the attorney testified, made expert analysis "absolutely essential." *Id.* at 647. In addition, two digital video experts testified that analysis at a government facility would significantly increase the cost and effort of the job. *Knellinger*, 471 F.Supp.2d at 647-48. More importantly, both experts testified that transporting their equipment to the government facility would be difficult, expensive, and may cause concerns about the reliability of the equipment after the move. *Id.* Because of the problems in transporting the equipment, including the effect it would have on their ability to perform their jobs, both testified that they "would not agree to work on a case like Knellinger's . . ." *Id.*

In the present case, unlike in *Knellinger*, Defendant has not presented any evidence that

---

[4] Because the Court finds *Knellinger* distinguishable, it does not reach the question of whether, on the facts presented there, this Court would have reached the same result. Rather, the Court accepts *Knellinger's* holding and assesses this case based on that premise.

potential experts would not agree to perform the work given the restraints of having to work at a government facility.  Defendant has only presented a letter from a potential expert in which the expert indicated that the cost would be significantly higher.[5]  Although there is no indication that the costs in this case would increase as significantly as those in the *Knellinger* case, it seems that higher discovery costs were an obvious result of the passage of § 3059(m).  That argument, therefore, is one that would have been appropriate to make to Congress when it was crafting the statute, but not to the Court at this stage.  Where costs caused by the restraints of § 3059(m) become so high as to prevent any feasible way to perform the analysis, or where, as in *Knellinger*, the logistical problem of safely transporting equipment deters experts from agreeing to perform the work, then it is more likely that an "ample opportunity" has not been provided. There is no evidence of those problems in this case, however, and the Court need not resolve that question now.  It is also worth noting that *Knellinger* involved a defendant who was paying his own costs, whereas the present case involves an indigent defendant represented by the federal public defender's office.  Any expert expenses, if approved, would come at the public expense, not at cost to Defendant.  Finally, counsel for Defendant conceded that she has not raised any "virtual children" defense that would require the extensive analysis discussed in *Knellinger*.  There is no showing that expert analysis is even required in this case.  The Court, therefore, does not find that *Knellinger* supports what Defendant requests in this case.

Other than relying on *Knellinger*, defense counsel complains that the process of reviewing

---

[5]  Although that letter was not attached to the Motion to Compel, and it was not moved into evidence at the hearing, it was presented to the Court and counsel for the government and referred to extensively at the hearing.  Indeed, counsel for the government read a large portion of it into the record.  To give Defendant the benefit of the doubt, the Court will consider this letter in evaluating whether Defendant has "ample opportunity" to inspect in this case.

10

the material at the government facility is cumbersome, requires multiple trips back and forth, permits viewing only during business hours, and is generally uncomfortable because it is done in the presence of counsel for the government.  Although the Court does not doubt that this process is far less convenient for defense counsel than if she could review the material at her own office and on her own schedule, these complaints do not amount to the deprivation of an "ample opportunity" to view, examine, or inspect the material, or otherwise to violations of Defendant's right to constitutional due process.  They are incidental nuisances that must have been contemplated by Congress when it passed § 3059(m).  In addition, counsel for the government indicated that he did not have to be present when defense counsel conducted her examination of the material, and did so only to answer questions and make the process more efficient.  He also indicated that he had never been asked to leave, but would do so if asked.

Accordingly, the Court does not find, on the evidence before it, that the government has failed to provide "ample opportunity" for the defense team to inspect, view, and examine the material.

## III.    CONCLUSION

For the reasons explained above, Defendant's *Motion to Compel Rule 16 Information* (Doc. 14) is **DENIED**.[6]

**IT IS SO ORDERED.**

> s/Kathleen M. O'Malley
> **KATHLEEN McDONALD O'MALLEY**
> **UNITED STATES DISTRICT JUDGE**

**Dated: June 25, 2007**

---

[6]  A separate trial order will follow.

11